UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| OSMEL MAESTRE, | : | |
| --- | --- | --- |
| | : | |
| Plaintiff, | : | Civil Action No.: 18-02494 |
| | : | |
| v. | : | Re Document No.: 10 |
| | : | |
| SDH SERVICES EAST, LLC, | : | |
| | : | |
| Defendant. | : | |

# MEMORANDUM OPINION

### GRANTING DEFENDANT'S MOTION TO PARTIALLY DISMISS

## I. INTRODUCTION

In this employment discrimination suit, Osmel Maestre alleges that his employer, SDH Services East, LLC ("SDH"), violated Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.* Am. Compl. ¶¶ 1–2, ECF No. 9. Specifically, Mr. Maestre contends that Defendant subjected him to disparate treatment based on race, *id.* ¶¶ 39–49, created a discriminatorily hostile work environment based on his national origin, *id.* ¶¶ 50–59, and then retaliated against him when he reported harassment and discriminatory conduct based on national origin, *id.* ¶¶ 60–74. Defendant now moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's hostile work environment and reprisal claims.[1]

For the reasons set forth below, the Court finds that Plaintiff has failed to make out a plausible claim for relief pursuant to either his hostile work environment claim or his retaliation claim. This Court therefore grants Defendant's motion to partially dismiss his complaint.

---

[1] Defendant does not move to dismiss count one of Plaintiff's complaint, which alleges disparate treatment on the basis of Plaintiff's protected class status (Hispanic/Cuban). Am. Compl. ¶¶ 39–49.

## II. FACTUAL BACKGROUND[2]

On August 22, 2016, Mr. Maestre was hired as a Senior Manager for SDH. *See* Am. Compl. ¶ 14. He identifies as a Cuban-American and as Hispanic. *Id.* ¶ 6. Mr. Maestre asserts that Defendant discriminated against him over the following year because of his national origin and his ethnicity. *See generally id.* More specifically, Mr. Maestre alleges that Defendant, as an organization, systematically discriminated against Mr. Maestre and other similarly situated employees by giving non-white employees inferior job assignments. *See id.* ¶¶ 17–25, 28. Plaintiff avers that he was routinely asked to perform undesirable work that was the responsibility of other white employees. *Id.* ¶¶ 20–25, 28. For example, "Plaintiff was expected to be on call and immediately respond to building issues that came up, for periods of seven to fourteen days straight and for at least seven days straight every three to four weeks." *Id.* ¶ 28. He was also "forced to be the Manager on Duty; [given] call center responsibilities; serv[ed] as the ergonomics contractor; . . . and [was] assigned work on weekends." *Id.* ¶ 21. In addition to these assignments, Mr. Maestre states that he and other similarly situated employees were given fewer training opportunities than white employees, *id.* ¶ 18, and that a less qualified white candidate was promoted in lieu of Plaintiff, *id.* ¶ 19.

Mr. Maestre contends that his supervisor, Ms. Julie Policastro, exacerbated this environment of discriminatory treatment by mistreating him in front of other employees. *Id.* ¶¶ 26–34. Mr. Maestre states that Ms. Policastro would publicly "belittle, harass, and intimidate"

---

[2] Because Defendant's motion to dismiss concerns only Mr. Maestre's hostile work environment and retaliation claims, *see generally* Def.'s Mot., this Court limits its discussion of the factual background to what is applicable to those claims.

At the motion to dismiss stage, the Court views the evidence in the light most favorable to Plaintiff. *See United States v. Philip Morris Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000) ("At the motion to dismiss stage, the only relevant factual allegations are the plaintiffs', and they must be presumed to be true.").

him multiple times a day "by pointing her finger" at him and yelling "Come in here!" *Id.* ¶ 26; *see also id.* ¶ 32 (stating that Ms. Policastro would call Plaintiff into public areas and "intimidate and taunt" him "with facial expressions while . . . pointing her finger directly at Plaintiff"); *id.* ¶ 33 (describing "incidents and harassment" as occurring "twice or more a day"). Moreover, when Mr. Maestre attempted to speak with Ms. Policastro regarding the additional work assigned to him, she "would yell and look at Plaintiff with disgust" and scream "[h]ere we go again" in front of other employees. *Id.* ¶ 29; *see also id.* ¶ 34 (stating that Ms. Policastro "reprimand[ed] Plaintiff in front of other[s]" for his failure to perform the extra duties assigned to him).

Mr. Maestre also describes two problematic meetings with Ms. Policastro. First, during a meeting in late May 2017, Ms. Policastro informed him that "anyone who defends their employees will no longer be here" and "threatened" to terminate Plaintiff if he did not terminate the African-American managers whom he supervised. *Id.* ¶ 30. Thereafter, Mr. Maestre states that Ms. Policastro "subjected him to consistent verbal abuse on a daily basis" and asked him about a "plan" for terminating Plaintiff's minority supervisees. *Id.* ¶ 31. The second incident occurred during a different meeting with Ms. Policastro, Mr. Maestre, and another employee, Charon Jackson.[3] *Id.* ¶ 33. On this occasion, Ms. Policastro responded to Mr. Maestre's recommendations about ways to improve the organization's Key Performance Indicators by telling Mr. Maestro to "forget about it" while "smirk[ing] and ma[king] a face with disgust." *Id*.

In addition, Mr. Maestre asserts that Ms. Policastro repeatedly threatened to fire both him and his wife, who also works for Defendant, "unless they compl[ied] [with] her demands." Pl.'s Opp'n Mot. Dismiss 4 ("Pl.'s Opp'n"), ECF No. 11;[4] Am. Compl. ¶¶ 27, 30–31, 33. During one

---

[3] Plaintiff does not identify the date of this meeting.

[4] Because Plaintiff's opposition is not paginated, the Court refers to the ECF page numbers.

interaction, Ms. Policastro told other employees that Defendant's employment of Mr. Maestre's wife "was not working out." *Id.* ¶ 27. More generally, Mr. Maestre states that Ms. Policastro "talk[ed] negatively" about his wife, an SDH employee, with other individuals at the company. *Id.*

In response to most of these incidents, Mr. Maestre reported Ms. Policastro's conduct to Defendant's Human Resources Department ("HR Department").[5] *Id.* ¶¶ 32, 64. Although the HR Department responded by saying that it would escalate his complaints, *id.* ¶ 32, it failed to take any action to "prevent or correct further discrimination and harassment," *id.* ¶ 35.

After lodging this complaint with the HR Department, Mr. Maestre alleges that Ms. Policastro retaliated against him. *Id.* ¶¶ 36–38, 60–74. He avers that, in retaliation for his protected activity, his work responsibilities were changed and he was given "routine tasks" that took his attention away from "critical activities under his job function." *Id.* ¶ 36. He also states that Ms. Policastro altered his responsibilities by "transferr[ing] work from other Directors to Plaintiff" and by adjusting "Plaintiff's work schedule to alleviate her responsibility to be on call." *Id.* ¶ 38. Mr. Maestre further asserts that Ms. Policastro "micromanaged" him, *id.*, scrutinized his "work, his area, and his direct reports," *id.*, and "excluded [him from] meetings with his staff," *id.* ¶ 36. Finally, Mr. Maestre claims that Ms. Policastro retaliated by threatening to "blame" Plaintiff's wife if a contract was cancelled and by otherwise "treat[ing] Plaintiff's wife negatively" in front of his coworkers. *Id.* ¶ 37.

---

[5] Mr. Maestre states that he reported "most" of these incidents to Defendant's HR Department, Am. Compl. ¶ 28, but does not specify which incidents were or were not reported.

4

On July 14, 2017, Mr. Maestre filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that Defendant violated Title VII. [6] *Id.* ¶ 8 (citing EEOC Charge No. 517-2017-01748). Mr. Maestre states that his EEOC complaint included allegations that he was subjected to "discrimination based upon national origin and retaliation for filing a complaint of national origin [discrimination]." *Id.* ¶ 10. One year later, the EEOC dismissed Mr. Maestre's complaint, and the agency sent him a right-to-sue letter on July 14, 2017.[7] *Id.* ¶ 11.

On October 29, 2018, Mr. Maestre filed a complaint against SDH alleging race discrimination, creation of a discriminatory hostile work environment, and retaliation, *see generally* Compl., ECF No. 1, which he subsequently amended, *see* Am. Compl.[8] In response,

---

[6] Plaintiff's administrative complaint to the U.S. Equal Employment Opportunity Commission ("EEOC") alleged violations of both Title VII and the Rehabilitation Act. Am. Compl. ¶ 8. Mr. Maestre's complaint before this Court raises only Title VII claims. *See id.* ¶ 2.

[7] Before an individual can file a Title VII lawsuit, he must exhaust the administrative remedies available through the EEOC. *See Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995). Mr. Maestre claims to have met this requirement for his hostile work environment and retaliation claims, *see* Compl. at ¶¶ 51, 63, and Defendant does not argue anything to the contrary, *see generally* Def.'s Mot.; Def.'s Reply in Support of Mot. Part. Dismiss ("Def.'s Reply"), ECF No. 13. The Supreme Court has held that Title VII's administrative exhaustion requirement is not jurisdictional and is only to be considered where properly raised by a party. *See Fort Bend Cty. v. Davis*, 139 S. Ct. 1843 (2019). Here, because Defendant has not raised the issue of administrative exhaustion, this Court will not address it.

[8] The Court notes that Mr. Maestre characterizes his protected status in different ways at different points. For instance, Plaintiff's amended complaint alleges harassment due to his national origin, *see* Am. Compl. ¶ 57, yet his opposition to Defendant's motion to partially dismiss states that the same incidents occurred because of his ethnicity, Pl.'s Opp'n 4; *see also* Def.'s Mem. P. & A. in Support of Mot. Part. Dismiss ("Def.'s Mem.") 7, ECF No. 10-1 (referring to Plaintiff's claims as alleging "race and/or national origin discrimination"). This is not a case where the distinction between race, ethnicity, and national origin-based discrimination shapes the analysis (*e.g.*, an American plaintiff alleges that her Canadian supervisor subjected her to a hostile work environment, or a Hispanic, Cuban individual alleges that her Panamanian supervisor favored Hispanic, Panamanian coworkers). Accordingly, this Court will consider Plaintiff's race, ethnicity, and national origin claims jointly in assessing his claims. For the sake

5

Defendant moved to dismiss two of Plaintiff's claims (for hostile work environment and retaliation) under Federal Rule of Civil Procedure 12(b)(6). *See* Def.'s Mot. 1. For the reasons set forth below, the Court grants Defendant's partial motion to dismiss.

### III. LEGAL STANDARD[9]

To pursue a claim in federal court, a plaintiff must provide a "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a plaintiff fails to provide such a statement, then the defendant can move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).

In evaluating a motion to dismiss, a court "must treat the complaint's factual allegations as true and must grant [the] plaintiff the benefit of all inferences that can be derived from the facts alleged." *W. Org. of Res. Councils v. Zinke*, 892 F.3d 1234, 1240 (D.C. Cir. 2018) (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000)). If the complaint lacks

---

of clarity, the Court refers to Plaintiff's complaint as alleging discrimination based on national origin and ethnicity, which he most consistently identifies as the basis for his protected status.

[9] As discussed below, the Court evaluates the instant motion as a Rule 12(b)(6) motion to dismiss for failure to state a claim. Although Mr. Maestre contends that Defendant should have moved under Rule 12(e) to request a more definite statement instead of moving under Rule 12(b)(6) to dismiss his claims, *see* Pl.'s Opp'n 6, he misapprehends the Rule 12(e) legal standard. Rule 12(e) allows a party to move for a more definite statement when the pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e); *see also Johnson v. Metro. Direct Prop. & Cas. Ins. Co.*, 2018 U.S. Dist. LEXIS 176318 at *6 (D.D.C. 2018) ("Normally, . . . the basis for requiring a more definite statement under Rule 12(e) is unintelligibility, not mere lack of detail.") (quoting *Thorp v. District of Columbia*, 309 F.R.D. 88, 90 (D.D.C. 2015)). On Mr. Maestre's own construal of his pleading, however, it is not unintelligible; to the contrary, he asserts that "Plaintiff sufficiently gives notice to Defendant that he is claiming a hostile work environment and retaliation" theory of relief. Pl.'s Opp'n 6. Thus, Rule 12(e) is inapposite, and, moreover, Plaintiff cites no authority to support his proposition that Defendant's Rule 12(b)(6) motion is improper.

"sufficient factual matter . . . to 'state a claim to relief that is plausible on its face,'" then the motion to dismiss should be granted. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff's claim is plausible if the factual allegations, taken as true, are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56. That said, a court need not accept as true "a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to withstand a motion to dismiss. *Id*.

With respect to Plaintiff's Title VII claims, a plaintiff is not required to plead all the elements of a *prima facie* case to survive a Rule 12(b)(6) motion to dismiss. *See Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–11 (2002)). Rather, at this stage, Plaintiff only needs to allege sufficient facts to make his claims of retaliation and discrimination "plausible." *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 70 (D.C. Cir. 2015) (citations omitted).

## IV. ANALYSIS

### A. Hostile Work Environment

Mr. Maestre contends that his supervisor's regular treatment of him subjected Plaintiff to a discriminatorily hostile work environment. *See* Am. Compl. ¶¶ 50–59. As described above, Plaintiff states that Hispanic employees like Mr. Maestre were regularly assigned more work, denied sufficient training, and passed over in promotions while white employees advanced. *Id.* ¶¶ 17–25. In support of his claim, Mr. Maestre also describes a troubled work environment in which his supervisor regularly publicly ridiculed him, *id*. ¶¶ 6, 26–34, 57; pointed her finger and yelled at Plaintiff in front of other employees, *id.* ¶¶ 26, 32; disparaged him at least two times a

day, *id.* ¶¶ 26, 33; subjected him to a "barrage of offensive" comments, *id.* ¶ 56; made faces of "disgust" towards Plaintiff on multiple occasions, *id.* ¶¶ 29, 34; warned him that he needed to terminate the minority employees whom he supervised and threatened his own employment if he did not do so, *id.* ¶¶ 30, 31; and publicly spoke ill of Plaintiff's wife (another employee of Defendant) on other occasions, *id.* ¶¶ 27, 30–31, 33.

Defendant contests the legal viability of Plaintiff's claims on two grounds. First, Defendant asserts that Mr. Maestre cannot satisfy the hostile work environment legal standard because "there are no allegations that[,] if proven true[,] would suggest that [Ms.] Policastro engaged in the complained of behavior *because* [Mr.] Maestre is Hispanic." Def.'s Mot. 5 (citations omitted) (emphasis in original). Second, Defendant argues that even if Mr. Maestre's allegations are true, they are inadequate to support a hostile work environment claim. *See* Def.'s Mot. 4–7. Specifically, Defendant argues that Mr. Maestre has failed to allege facts that demonstrate that he experienced harassment that is actionably severe or pervasive. *Id.* at 6. For the following reasons, the Court agrees that Plaintiff has not made out a plausible claim for relief, but will grant Plaintiff leave to file a further amended complaint to augment his factual allegations.

Title VII prohibits employers from "creat[ing] or condon[ing] a discriminatorily hostile or abusive [work] environment." *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 188–89 (D.D.C. 2012). These protections do not set out a "general civility code for the American workplace." *Casey v. Mabus*, 878 F. Supp. 2d 175, 189 (D.D.C. 2012) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). Rather, under Title VII's "demanding legal standard," *Tucker v. Johnson*, 211 F. Supp. 3d 95, 101 (D.D.C. 2016) (quoting *Bergbauer v. Mabus*, 934 F. Supp. 2d 55, 77 n.20 (D.D.C. 2013)), such an abusive environment exists only

if "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment.'" *Harris*, 510 U.S. at 21 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). Harassment is severe or pervasive if it creates "an environment that a reasonable person would find hostile or abusive" and that the victim in fact subjectively perceives as abusive. *Id.*; *see also Casey*, 878 F. Supp. 2d at 188 (quoting *Harris*, 510 U.S. at 21). "There is no 'mathematically precise test,' for what makes a workplace 'so objectively offensive as to alter the 'conditions' of the victim's employment.'" *Sierra v. Hayden*, No. CV 16-1804 (RC), 2019 WL 3802937, at *12 (D.D.C. Aug. 13, 2019) (first quoting *Harris*, 510 U.S. at 22, then quoting *Oncale*, 523 U.S. at 81). To evaluate whether the conduct at issue rises to this level, a court is to assess the totality of the circumstances and "consider the frequency of the harassing conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance." *Stewart v. Evans*, 275 F.3d 1126, 1134–35 (D.C. Cir. 2002) (citing *Harris*, 510 U.S. at 21–23); *see also Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008).

Furthermore, to make out an actionable hostile work environment claim, the plaintiff must establish that the alleged "harassment occurred because of . . . [his] protected status." *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 189 (D.D.C. 2012) (citation omitted); *see also Dorns v. Geithner*, 692 F. Supp. 2d 119, 135–36 (D.D.C. 2010) (internal citations omitted). This showing requires a "linkage between the hostile behavior and the plaintiff's membership in a protected class." *Douglas-Slade v. LaHood*, 793 F. Supp. 2d 82, 101 (D.D.C. 2011) (quoting *Na'im v. Clinton,* 626 F. Supp. 2d 63, 73 (D.D.C. 2009)); *see also Baloch*, 550 F.3d at 1201. A court is to apply the same totality of the circumstances analysis to determine whether the requisite linkage exists. *Sierra*, 2019 WL 3802937, at *12 (citing *Baloch*, 550 F.3d at 1201). At

the motion to dismiss stage, "[a]lthough a plaintiff need not plead a *prima facie* case of hostile work environment in the complaint, the 'alleged facts must support such a claim.'" *McKeithan v. Boarman*, 803 F. Supp. 2d 63, 69 (D.D.C. 2011), *aff'd in part,* No. 11-5247, 2012 WL 1450565 (D.C. Cir. Apr. 12, 2012), and *aff'd sub nom. McKeithan v. Vance-Cooks*, 498 F. App'x 47 (D.C. Cir. 2013) (quoting *Middlebrooks v. Godwin Corp.,* 722 F. Supp. 2d 82, 90–91 & n.6 (D.D.C. 2010)); *see also Ervin v. Howard Univ.,* 562 F. Supp. 2d 58, 70 (D.D.C. 2008).

In this case, Defendant argues that Mr. Maestre's complaint should be dismissed because Plaintiff fails to connect the allegedly discriminatory conduct to his national origin or ethnicity. *See* Def.'s Mem. 5; Def.'s Reply 1, 3–4. Plaintiff disputes this characterization on the grounds that "he was held responsible for the work of other similarly situated Directors of a different race such as Michael Jordan and Todd Murphy, both Caucasian males." Pl.'s Opp'n 4 (citing Am. Compl. ¶ 34). Plaintiff's complaint does not articulate any other direct linkages between the facts alleged in support of his hostile work environment claim and his protected attributes. Nor does Plaintiff's opposition explain any such linkage. The only time that ethnicity or national origin are mentioned with respect to this claim is Plaintiff's statement that he was publicly reprimanded "for work that was not Plaintiff's responsibility nor job description and [which] was the responsibility of other similarly Directors of a different race," namely two Caucasian males.[10] Am. Compl. ¶ 34. For the reasons set forth below, Defendant is correct: this stand-

---

[10] Mr. Maestre also references race with respect to Ms. Policastro's alleged directive to terminate the African-American employees whom Plaintiff supervised. Am. Compl. ¶¶ 29–30. However, because this reference does not involve *Mr. Maestre's* race/ethnicity, the Court does not consider it applicable with respect to this aspect of the analysis, which assesses whether Plaintiff has asserted factual allegations that plausibly connect Defendant's conduct to Plaintiff's own status in a protected class.

10

alone "allegation is insufficient to raise an inference" that the overall pattern of alleged discriminatory conduct occurred "*because* [Mr.] Maestre is Hispanic." Def.'s Reply 3.

Title VII's protections do not cover every kind of workplace dispute. *See Casey*, 878 F. Supp. 2d at 189 (quoting *Oncale*, 523 U.S. at 80) (emphasizing that Title VII does not set out a "general civility code for the American workplace"). To filter out workplace disputes that are unrelated to a protected category, "allegations of discriminatory acts that are unrelated to the plaintiff's protected status cannot be used to support a hostile work environment claim." *Martinez v. Puerto Rico Fed. Affairs Admin.*, 813 F. Supp. 2d 84, 94–95 (D.D.C. 2011) (quoting *Nurriddin v. Goldin,* 382 F. Supp.2 d 79, 108 (D.D.C. 2005)); *see also Na'im*, 626 F. Supp. 2d at 73 ("[H]ostile behavior, no matter how unjustified or egregious, cannot support a claim of hostile work environment unless there exists some linkage between the hostile behavior and the plaintiff's membership in a protected class."). To be sure, the relationship between the allegedly discriminatory conduct and the plaintiff's status may be subtle. For instance, this Circuit has held that evidence showing mockery of an employee's name and accent could permit a jury to infer national origin discrimination. *Mayorga v. Merdon*, 928 F.3d 84, 93 (D.C. Cir. 2019).[11] But whether the factual allegations involve direct evidence or rely on implications, the bottom line is that there must be some connection drawn.

Here, however, the allegations made do not include either direct or indirect non-conclusory factual allegations that plausibly indicate a causal relationship between Ms. Policastro's conduct and Mr. Maestre's national origin or ethnicity. There is simply not enough in the facts provided to establish how Ms. Policastro's harshness towards Plaintiff reflected these

---

[11] Although *Mayorga* involved a non-promotion claim, the Court reads the case to advise more generally that factors such as mockery of an accent can provide indirect evidence of national origin discrimination.

11

protected attributes. Mr. Maestre may intend to suggest to the Court that his status as Cuban/Hispanic is, itself, enough to give rise to a cause of action. But the bare fact that an individual belongs to a protected category, coupled with a single factual allegation concerning that category, is not enough to plausibly suggest the required connection. *See Hunter v. D.C.*, 797 F. Supp. 2d 86, 93–94 (D.D.C. 2011), *aff'd sub nom. Hunter v. D.C. Gov't*, No. 13-7003, 2013 WL 5610262 (D.C. Cir. Sept. 27, 2013) (internal citations omitted) (dismissing hostile work environment claim where plaintiff left the court "to infer that each act was discriminatory" based upon his race and gender and pled only one fact that connected his membership in a protected class to the alleged discriminatory acts). Without additional facts to connect these dots, which Plaintiff does not supply, Mr. Maestre has not made out a plausible claim that the contested conduct reflects discrimination on the basis of national origin or ethnicity, as opposed to harsh management practices.[12] *See Stewart*, 275 F.3d at 1133 (upholding district court's

---

[12] Mr. Maestre's complaint also includes conclusory allegations concerning preferential treatment of similarly-situated Caucasian employees, *see, e.g.*, Am. Compl. ¶ 18 ("[A]ll necessary training, staff, resources, and the opportunity for additional certifications" that were "needed to complete essential job functions . . . were exclusively granted to similarly situated Caucasian employees."); *id.* at ¶ 19 ("Despite Maestre being more qualified, each [senior-level] position was occupied by a less qualified Caucasian candidate."); *id.* at ¶ 20 ("Mr. Maestre and similarly situated employees also were more than likely to receive a heavier workload than their Caucasian counterparts."). As discussed above, Plaintiff makes this allegation in passing in his hostile work environment claim. *See id.* at ¶ 34. But these contentions are primarily advanced in support of Plaintiff's race discrimination claim. *See id.* ¶¶ 18–20, 39–49. To succeed on a Title VII race discrimination claim, the claimant-employee must establish that he and the employee of a different race who allegedly received preferential treatment were "similarly situated *in all relevant respects.*" *Barbour v. Browner*, 181 F.3d 1342, 1354 (D.C. Cir. 1999) (Tatel, J., concurring in part and dissenting in part) (emphasis in original); *see also Royall v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 548 F.3d 137, 145 (D.C. Cir. 2008) (concluding that claimant failed to show that "all of the relevant aspects of [his] employment were nearly identical to those of" an employee of a different race (quoting *Neuren v. Adduci, Mastriani, Meeks & Schill,* 43 F.3d 1507, 1514 (D.C. Cir. 1995) (internal quotation marks and citation omitted))); *Taylor v. Small*, 350 F.3d 1286, 1294 (D.C. Cir. 2003) ("[I]n order to make out a prima facie case of

dismissal of suit where there was "no basis upon which to infer" that supervisor's anger concerning employee's workplace conduct "was motivated by" the employee's membership in a protected class). And without providing more facts to support the required causation, even taking all factual allegations in Plaintiff's complaint to be true, Mr. Maestre has not pled "enough to raise a right to relief above the speculative level." [13] *Twombly*, 550 U.S. at 555–56. Thus, he cannot plausibly make out a hostile work environment theory of relief on the facts before the Court. *See McKeithan*, 803 F. Supp. 2d at 69. The Court will, however, grant Plaintiff leave to file an amended complaint to address these deficiencies.[14]

### B. Retaliation

Mr. Maestre also contends that Defendant violated Title VII by retaliating against him for alleging workplace discrimination to Defendant's HR Department. *See* Am. Compl. ¶¶ 35–38, 60–74. Mr. Maestre asserts that, after he raised his complaint of discrimination with the HR Department, Ms. Policastro retaliated against him by micromanaging his performance, changing

---

discriminatory refusal to promote, . . . the plaintiff must show that . . . 'other employees of similar qualifications'" were treated preferentially "at the time the plaintiff's request for promotion was denied." (quoting *Bundy v. Jackson*, 641 F.2d 934, 951 (D.C. Cir. 1981))). Because Defendant has not moved to dismiss Plaintiff's race discrimination claim, the Court does not presently consider whether Mr. Maestre has made out a claim for relief, including whether he is an apt comparator to the employees who allegedly received preferential treatment, under this theory.

[13] As Defendant notes, Plaintiff's argument that he more than cleared the low bar required at the motion to dismiss stage, *see* Pl.'s Opp'n 3–4, relies on a now-outdated legal standard, *see* Def.'s Reply 2 n.2. Under controlling precedent, Plaintiff is incorrect in contending that it is improper to dismiss the suit "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Pl.'s Opp'n 3 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)).

[14] Because the Court reaches this conclusion, it does not consider whether the alleged conduct is adequately severe or pervasive to survive a motion to dismiss. But, to the extent Plaintiff elects to further amend his complaint, it may be wise to address this issue as well.

his work assignments, scheduling him for different shifts, and excluding him from meetings with his staff, as well as by treating Plaintiff's wife "negatively" in front of other staff and threatening to "blame" his wife if Defendant lost a contract. *Id.* at ¶¶ 36–38. Taken together, Mr. Maestre contends these actions have negatively impacted his employment and have "created a climate of fear" that "chill[s] . . . other employees' willingness to engage in protected activity." *Id.* at ¶¶ 66, 69–70. Defendant retorts that Mr. Maestre's pleading fails to make out a claim of retaliation. *See* Def.'s Mem. 7–8. Defendant again attacks the causation element of Plaintiff's claim and argues that Mr. Maestre has failed to allege facts that suggest that Ms. Policastro knew of his reports to the HR Department and "that the adverse action occurred soon thereafter." *Id.* at 7 (quoting *McNair v. District of Columbia*, 213 F. Supp. 3d 81, 89 (D.D.C. 2016)). Without more concrete factual allegations concerning the relevant timeline, Defendant contends that Mr. Maestre's claim of retaliation is insufficient and should be dismissed. *Id.* at 7–8. Although it is a close question, for the reasons set forth below, Defendant has the better argument on the pleadings presently before the Court.

Title VII forbids retaliating against an employee because he reported or otherwise opposed any discriminatory employment practice. *See Allen v. Johnson*, 795 F.3d 34, 38 (D.C. Cir. 2015) (citing 42 U.S.C. § 2000e-3(a)). To establish a claim of "unlawful retaliation, a plaintiff must show: (1) that he opposed a practice made unlawful by Title VII; (2) that the employer took a materially adverse action against him; and (3) that the employer took the action 'because' the employee opposed the practice." *Harris*, 791 F.3d at 68 (quoting *McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012)) (citation omitted). However, "at the motion-to-dismiss stage, a plaintiff does not need to prove a *prima facie* case of [retaliation]." *McNair*, 213 F. Supp. 3d at 86 (citing *Swierkiewicz*, 534 U.S. at 510–12; *Twombly*, 550 U.S. at 569–70); *see*

*also Brown v. Sessoms*, 774 F.3d 1016, 1023 (D.C. Cir. 2014); *Brady*, 520 F.3d at 493. The sole question for a district court presented with a motion to dismiss a retaliation claim under Title VII "is whether [the plaintiff has] alleged facts that, taken as true, render his claim of retaliation plausible." *Harris*, 791 F.3d at 70 (citing *Twombly*, 550 U.S. at 556). Because the only element of Mr. Maestre's retaliation claim that Defendant contests is causation, the Court focuses on this aspect of Plaintiff's complaint.

At the motion to dismiss stage of litigation, "the hurdle of alleging a causal link is not a high one." *Cavalier v. Catholic Univ. of Am.*, 306 F. Supp. 3d 9, 38 (D.D.C. 2018) (citing *Jones v. Bernanke*, 685 F. Supp. 2d 31, 40 (D.D.C. 2010); *Winston v. Clough*, 712 F. Supp. 2d 1, 11 (D.D.C. 2010)). For instance, a plaintiff can rely on factors such as temporal proximity or "other factual allegations that, construed in the light most favorable to the plaintiff, would 'plausibly' establish this element of the claim." *Id.* (quoting *Twombly*, 550 U.S. at 570) (citing *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012); *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007); *Singletary v. District of Columbia*, 351 F.3d 519, 525 (D.C. Cir. 2003); *Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Emps. of Library of Cong., Inc. v. Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013)). However, where a plaintiff relies solely on temporal proximity "between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case[,] . . . the temporal proximity must be '*very close.*'" *Jones v. D.C. Water & Sewer Auth.*, 922 F. Supp. 2d 37, 42 (D.D.C. 2013) (quoting *Clark Cnty. Sch. Dist. v. Breeden* (*Clark Cnty.*), 532 U.S. 268, 273 (2001)); *see also Singletary*, 351 F.3d at 525 ("[T]his circuit has held that a close temporal relationship may alone establish the required causal connection.").

Here, Mr. Maestre's retaliation claim rests on a causal chain wherein he "engaged in a protected activity by complaining to Human Resources about race discrimination," and then "his supervisor increased scrutiny on his work product and made him work shifts outside of his job duties." Pl.'s Opp'n 5 (citing Am. Compl. ¶¶ 35–36, 38). Defendant contends that this claim of retaliation is not plausible because Plaintiff fails to "allege even a rough timeline of events" that could support an inference of causation and thereby sustain a plausible claim for relief. Def.'s Mem. 8. The Court agrees. Even giving Mr. Maestre's pleadings the generous read they are due at this stage of litigation, Plaintiff's complaint appears to rely exclusively on temporal proximity to establish causation. Apart from his assertion that "Ms. Policastro increased scrutiny" on Plaintiff and "retaliated by changing Plaintiff's work schedule" after Mr. Maestre complained to the HR Department, Am. Compl. ¶ 38, Plaintiff does not advance any factual allegations in support of his retaliation claim. Although, taking Plaintiff's factual allegations to be true, Mr. Maestre has established that the alleged reprisal occurred after his complaint to the HR Department, *see id.*, what he fails to do is to say anything about the dates of the relevant events or even to provide the basis for any plausible inference that Ms. Policastro was aware of his protected activity. The amended complaint states only that all the alleged conduct occurred sometime over the course of a year. *See* Am. Compl. ¶¶ 17–18, 32, 35–38. Without more, however, the Court has no basis from which to infer that the alleged sequence of events was "very close," *Clark Cnty.*, 532 U.S. at 273, and the Court can do no more than speculate about whether or not Plaintiff's protected activity caused the challenged conduct. Accordingly, even though the motion to dismiss stage does not require Plaintiff to assert facts concerning the causation aspect of the claim that would suffice to make out a *prima facie* case, Plaintiff's factual allegations, taken as true, are not "enough to raise a right to relief above the speculative level."

*Twombly*, 550 U.S. at 555. Thus, his pleading does not survive Defendant's motion to dismiss. That said, the Court grants Plaintiff leave to file an amended complaint to address the deficiencies in his retaliation claim identified here.

## V.  CONCLUSION

For the foregoing reasons, Defendant's motion to partially dismiss Plaintiff's retaliation and hostile work environment claims is granted. Plaintiff may, within thirty days, file an amended complaint. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  December 20, 2019                                  RUDOLPH CONTRERAS
                                                          United States District Judge